## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE RAYTHEON COMPANY<br>SECURITIES LITIGATION | : Civil Action No.<br>: 99-12142-PBS<br>: |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | :<br>:<br>: |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S COUNSEL'S APPLICATION FOR AN AWARD
## OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT.............................................................................................................. 3

I.     PLAINTIFF'S ATTORNEYS SHOULD BE AWARDED AS FEES A
PERCENTAGE OF THE COMMON FUND CREATED AS A RESULT
OF THE SETTLEMENTS............................................................................ 3

         1.    The First Circuit and Other Circuits Have Expressed a
Clear Preference For the Percentage Method in Awarding
Fees in Common Fund Cases............................................................ 4

II.    THE REQUESTED FEE IS FAIR AND REASONABLE AS A
PERCENTAGE OF THE FUND CREATED FOR THE BENEFIT OF
CLASS MEMBERS OR THE LODESTAR ANALYSIS AND IS LESS
THAN FEE AWARDS IN COMPARABLE CASES ........................................... 7

      A.    The Relevant Factors Support Plaintiff's Counsel's Fee Request............... 9

         1.    The Amount of the Recovery........................................................ 10

         2.    The Skill and Efficiency of Counsel.............................................. 10

         3.    The Complexity of the Litigation and the Risk of
Nonpayment................................................................................. 12

         4.    Plaintiff's Counsel Undertook This Action on a Contingent
Fee Basis ...................................................................................... 14

         5.    The Amount of Time Devoted ...................................................... 16

      B.    Public Policy Considerations ................................................................ 18

III.   A "CROSS-CHECK" OF PLAINTIFF'S COUNSEL'S LODESTAR
DEMONSTRATES THE REASONABLENESS OF THE REQUESTED
AWARD ....................................................................................................... 18

IV.   THE ABSENCE OF OBJECTIONS BY CLASS MEMBERS TO THE
FEE SOUGHT BY COUNSEL DEMONSTRATES THE
REASONABLENESS OF THE REQUESTED FEE............................................ 20

V.    PLAINTIFF'S COUNSEL SHOULD BE REIMBURSED FOR THEIR
REASONABLY INCURRED LITIGATION EXPENSES................................... 21

CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

**PAGE**

*In re 3Com Corp. Sec. Litig.,*
No. C-97-21083, 1999 U.S. Dist. LEXIS 22685
(N.D. Cal., July 8, 1999)...........................................................................................9

*In re "Agent Orange" Prod. Liab. Litig.,*
818 F.2d 226 (2d Cir. 1987).....................................................................................15

*In re "Agent Orange" Prod. Liability Litig.,*
611 F. Supp. 1296 (E.D.N.Y. 1985), *Aff'd in part and rev'd in part,*
818 F.2d 226 (2d Cir. 1987)........................................................................................6

*Anixter v. Home-Stake Prod. Co.,*
77 F.3d 1215 (10th Cir. 1996) ................................................................................15

*In re Apple Computer Sec. Litig.,* [1991 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶ 96,252 (N.D. Cal. Sept. 6, 1991) ............................15

*Backman v. Polaroid Corp.,*
910 F.2d 10 (1st Cir. 1990).....................................................................................15

*In re Bankamerica Corp. Secs. Litig.,*
228 F. Supp. 2d 1061 (E.D. Mo. 2002).....................................................................9

*Bateman Eichler v. Berner,*
472 U.S. 299, (1985)...............................................................................................18

*Blum v. Stenson,*
465 U.S. 886 (1984)...................................................................................................4

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980)...................................................................................................3

*Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.,*
778 F.2d 890, (1st Cir. 1985)..................................................................................20

*In re Buspirone Patent,*
01- MD-1410,  (S.D.N.Y. Apr. 11, 2003)..............................................................20

*Bussie v. Allmerica Fin. Corp.,*
No. 97-40204-NMG, 1999 U.S. Dist. LEXIS 7793
(D. Mass. May 19, 1999) ...........................................................................................6

*Camden I Condominium Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ...........................................................................5

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001)............................................................................3

*Cherner v. Transitron Elec. Corp.,*
    221 F. Supp. 55 (D. Mass. 1963) ....................................................................15

*In re Clorox Co. Sec. Litig.,*
    238 F. Supp. 2d 1139 (N.D. Cal. 2002),
    *aff'd,* 353 F.3d 1125 (9th Cir. 2004) ...............................................................15

*Conley v. Sears, Roebuck & Co.,*
    222 B.R. 181 (D. Mass. 1998) .........................................................................4

*In re Cont'l Illinois Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ...........................................................................5

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)............................................................................15

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    989 F. Supp. 375 (D. Mass. 1997) ...................................................................4

*Eisenstadt v. Centel Corp.,*
    113 F.3d 738 (7th Cir. 1997) ...........................................................................15

*In re Fleet/Norstar Sec. Litig.,*
    935 F. Supp. 99 (D.R.I. 1996).................................................................5, 7, 10

*Freedman v. Value Health, Inc.,*
    No. 01-7567, 2002 U.S. App. LEXIS 8383
    (2d Cir. May 1, 2002) ......................................................................................14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir.), *cert. denied,*
    516 U.S. 824 (1995).....................................................................................5, 6

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ...........................................................................5

*Grendel's Den, Inc. v. Larkin,*
    749 F.2d 945 (1st Cir. 1984).............................................................................18

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa 2000)........................................................................12

*Johnston v. Comerica Mortg. Corp.,*
    83 F.3d 241 (8th Cir. 1996) ............................................................................5

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998)...........................................................................19

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,*
    540 F.2d 102 (3d Cir. 1976)...........................................................................18

*Lipsett v. Blanco,*
    975 F.2d 934 (1st Cir. 1992)...........................................................................18

*In re Lloyd's Am. Trust Fund Litig.,*
    96 Civ. 1262, 2002 U.S. Dist. LEXIS 2263
    (S.D.N.Y. Nov. 26, 2002) ................................................................................7

*In re Lucent Techs., Inc. Sec. Litig.,*
    327 F. Supp. 2d 426 (D.N.J. 2004) ..................................................................8

*Malanka v. de Castro,*
    1990 U.S. Dist. LEXIS 19171, Fed. Sec. L. Rep. (CCH)
    ¶ 95,657 (D. Mass. Nov. 20, 1990)..................................................................8

*Maley v. Del Global Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................4, 20

*In re Microstrategy, Inc. Sec. Litig.,*
    172 F. Supp. 2d 778 (E.D. Va. 2001) ..............................................................9

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (1970).........................................................................................3

*Missouri v. Jenkins,*
    491 U.S. 274 (1989).......................................................................................19

*In re RJR Nabisco,* [1992 Transfer Binder]
    Fed. Sec. L. Rep. (CCH) ¶ 96, 984 .................................................................7

*Rawlings v. Prudential-Bache Props.,*
    9 F.3d 513 (6th Cir. 1993) ...........................................................................5, 9

*In re Rite Aid Corp. Sec. Litig.,*
    269 F. Supp. 2d 603 (E.D. Pa. 2003) ...............................................................8

*Robbins v. Koger Props., Inc.,*
    116 F.3d 1441 (11th Cir. 1997) .....................................................................14

*Savoie v. Merchants Bank,*
   166 F.3d 456 (2d Cir. 1999)..................................................................................................4

*In re Sequoia Systems, Inc.,* [1993-94 Transfer Binder]
   Fed. Sec. L. Rep. (CCH) ¶98,089 (D. Mass. Sept. 10, 1993) ............................................6

*Shaw v. Toshiba Am. Info. Sys.,*
   91 F. Supp. 2d 942 (E.D. Tex. 2000)..................................................................................6

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ...........................................................................................5

*Steiner v. Williams,*
   No. 99 Civ. 10186, 2001 U.S. Dist. LEXIS 7097 (S.D.N.Y. May 31, 2001)....................15

*Strougo v. Bassini,*
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................................7

*In re Sumitomo Copper Litig.,*
   74 F. Supp. 2d 393 (S.D.N.Y. 1999)..................................................................................7

*Swedish Hosp. Corp. v. Shalala,*
   1 F.3d 1261 (D.C. Cir. 1993)..............................................................................................5

*TBK Partners, Ltd. v. Warshow,* [1977-1978 Transfer Binder]
   Fed. Sec. L. Rep. (CCH) ¶ 96,196 (S.D.N.Y. Oct. 6, 1977)............................................21

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza*
   *Hotel Fire Litig.,*
   56 F.3d 295 (1st Cir. 1995)............................................................................................4, 5

*Trustees v. Greenough,*
   105 U.S. 527 (1882)............................................................................................................3

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
   724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................15, 18, 20

*In re Warner Communications Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................................15

*Weinberger v. Great N. Nekoosa Corp.,*
   925 F.2d 518 (1st Cir. 1991)...............................................................................................4

*In re WorldCom, Inc.. Sec. Litig.,*
   02 Civ. 3288, 2004 U.S. Dist. LEXIS 22992
   (S.D.N.Y. Nov. 12, 2004) ..................................................................................................9

## DOCKETED CASES

*In re APAC Teleservices Inc. Sec. Litig.,*
   No. 97 Civ. 9145 (BJS) ............................................................................................20

*In re Bay Fin. Corp. Sec. Litig.,*
   C.A. No. 89-2377-WD (D. Mass. Nov. 4, 1996) ............................................................8

*In re Biogen Sec. Litig.,*
   No. 94-12177-PBS (D. Mass 1999) .............................................................................14

*In Re: Copley Pharm., Inc. Sec. Litig.,*
   C.A.  No. 94-11897-WGY (D. Mass. Feb. 8, 1996) ......................................................8

*In re Gillette Sec. Litig.,*
   C.A. No. 88-1858-K (D. Mass. Mar. 30, 1994) ............................................................8

*In re Health Mgmt., Inc. Sec. Litig.,*
   No. 96-CV-889 (ADS) (E.D.N.Y. 1999) ......................................................................14

*Margaret Hall Found., Inc. v. Fin. Mgmt., Inc.,*
   C.A. No. 82-2543-S (D. Mass. May 9, 1989) .................................................................8

*Morton V. Kurzweil Applied Intelligence, Inc.,*
   C.A. No. 10829-REK (D. Mass. Feb. 4, 1998) ..............................................................8

*In re Oxford Health Plans Inc. Sec. Litig.,*
   MDL 1222 (S.D.N.Y. June 2003) ..................................................................................8

*In re Number Nine Visual Tech. Corp. Sec. Litig.,*
   Master File No. 96-11207 (Feb. 6, 2001) .......................................................................8

*In re Peritus Software Svc., Inc. Sec. Litig.,*
   Civil Action No. 98-CV-10578 (February 28, 2000) .....................................................8

*In re Picturetel Corp. Sec. Litig.,*
   C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) .......................................................8

*In re: Shiva Corp. Sec. Litig.,*
   Master File No. 97-11159 (October 27, 1994) ...............................................................8

*Zeid v. Open Env't Corp.,*
   C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) .......................................................8

## STATUTES

15 U.S.C. § 78u-4(a)(6) .............................................................................................................7, 22

15 U.S.C. §78u-4(f) .....................................................................................................................10

## OTHER AUTHORITIES

*Manual for Complex Litig.*, Fourth §14.121 at 192-93 (4th ed. 2004) .............................................9

Plaintiff's counsel respectfully submit this memorandum of law in support of their

petition for an award of attorneys' fees in the amount of 9% of the Settlement Funds to be paid in

cash and warrants in the same proportion as made available to class members and reimbursement

of out-of pocket litigation expenses of $6,992,407.22 plus interest earned at the same rate as the

Funds from the date of inception of the Funds through the date of payment. Lead counsel makes

its request for an award of attorneys' fees in the amount of 9% of the Settlement Funds pursuant

to a written retainer agreement with Lead Plaintiff entered into at the inception of this case to

prosecute this action on a contingent fee basis and to advance the costs and expenses of the

litigation.

## PRELIMINARY STATEMENT

By any measure, the Settlements obtained in this case - consisting of $260,000,000 in

cash and $200,000,000 worth of Raytheon warrants – are excellent. According to information

maintained by Stanford Law School's Securities Class Action Clearinghouse, these settlements

in the aggregate rank as one of the ten largest securities class action recoveries in history.

Further, the size of the settlements in relation to the potential damages that could have been

recovered is outstanding.

This excellent result would not have been possible without the tenacious and skillful

efforts of plaintiff's counsel, who prosecuted this case for over four years to the eve of trial on a

wholly contingent fee basis. Moreover, despite the formidable opposition presented by

defendants, Lead Plaintiff was able to sufficiently develop its case to press defendants into a

substantial settlement in this action. Lead counsel's skill and diligence in prosecuting this case

for more than four years, and their willingness to take this case to trial and risk their significant

investment of lodestar and out-of-pocket expenses merit the requested fee of 9% of the

Settlement Funds. Significantly higher percentages have been awarded in numerous cases that were far less risky, were not as intensely litigated and did not settle on the very eve of trial.

Nor does the Class appear to disagree. In accordance with this Court's September 7, 2004 Preliminary Order In Connection With Settlement Proceedings (the "Notice Order"), copies of the Notice of Proposed Settlements of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") were mailed to more than 180,000 potential Class Members, and a Summary Notice was published in the September 21, 2004 national edition of *The Wall Street Journal*.[1] The Notice described the litigation and the proposed Settlements, as well as plaintiff's counsel's intent to request an award of fees of nine percent (9%) of the Settlement Funds (including the same proportion of warrants) and reimbursement of their expenses up to a maximum amount of $8,250,000, plus interest. The Notice also informed Class Members of their right to object to this application. To date, there has not been any objections concerning the requested fee award and expense reimbursement.[2] The lack of objection from potential Class Members (including numerous sophisticated financial institutions) who received notice in this case is further grounds for finding that the requested award is reasonable and appropriate.

As set forth below, the requested attorneys' fees and expense reimbursement are fair and reasonable and should be awarded. The fee and expense request has been reviewed and approved by the Lead Plaintiff – an institutional investor with a significant financial stake in the outcome of the litigation, and the paradigm fiduciary for the Class that Congress envisioned in

---

[1] *See* Exhibits B and C to the Declaration of Lead Counsel In Support Of Proposed Class Action Settlements And Petition For An Award Of Attorneys' Fees And Reimbursement Of Expenses (the "Declaration") filed contemporaneously herewith.

[2] The deadline for objecting to the fee and expense request was November 9, 2004.

2

enacting the PSLRA. Evaluating counsel's work now, at the end of the case, Lead Plaintiff is in

a position to determine that the fee request is fair and reasonable and should be awarded. As the

Third Circuit held in *In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001), *cert. denied*,

535 U.S. 929 (2002), a fee approved by a lead plaintiff is presumptively reasonable: "Courts

should afford a presumption of reasonableness to fee requests submitted pursuant to an

agreement between a properly-selected lead plaintiff and properly-selected lead counsel." *Id.* at

220.

## ARGUMENT

## I. PLAINTIFF'S ATTORNEYS SHOULD BE AWARDED AS FEES A PERCENTAGE OF THE COMMON FUND CREATED AS A RESULT OF THE SETTLEMENTS

Courts have long recognized that when, as in this case, a party maintains a suit that

results in the creation of a fund for the benefit of a class, the costs of the litigation, including an

award of reasonable attorneys' fees, should be recovered from the fund created by the litigation.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375

(1970). This "equitable" or "common fund" doctrine established more than a century ago in

*Trustees v. Greenough*, 105 U.S. 527 (1882), spreads the cost of the litigation, including

attorneys' fees, among the fund's beneficiaries.

The rationale for the common fund principle was described by the Supreme Court in

*Boeing* as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who
> recovers a common fund for the benefit of persons other than himself or
> his client is entitled to a reasonable attorney's fee from the fund as a
> whole. . . . Jurisdiction over the fund involved in the litigation allows a
> court to prevent . . . inequity by assessing attorney's fees against the entire
> fund, thus spreading fees proportionately among those benefited by the
> suit. (Citations omitted.)

444 U.S. at 478. *See also In re Thirteen Appeals Arising [O]ut of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995); *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 523 (1st Cir. 1991).

Courts traditionally have used two methods to calculate reasonable attorneys' fees in common fund cases: (i) the percentage method, which awards attorneys' fees as a percentage of the common fund created for the benefit of the class; and (ii) the lodestar/multiplier approach, which multiplies the number of hours expended by counsel by the hourly rate normally charged for similar work by attorneys of comparable skill and experience, and enhances the resulting lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369-70 (S.D.N.Y. 2002). Although the First Circuit has expressed a preference for awarding fees based on a percentage of the recovery, the requested fee is supported under both methods.

> **1.      The First Circuit and Other Circuits Have Expressed a Clear Preference For the Percentage Method in Awarding Fees in Common Fund Cases**

Since *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), when the Supreme Court observed that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class," courts in the First Circuit have followed the trend in favor of awarding attorneys' fees from a common fund on a percentage of the fund (or "POF") basis. *See Thirteen Appeals*, 56 F.3d at 307 (pointing out the advantages of the POF approach over the lodestar approach); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (measuring attorneys' fees in a class action settlement as a percentage of the common fund); *Duhaime v. John Hancock*

*Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (same); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996) (same).[3]

In *Thirteen Appeals*, 56 F.3d at 307, the First Circuit's most recent pronouncement on the subject, the Court affirmed the District Court's attorneys' fees award of 31% of a $220 million common fund, *i.e.*, a fee of roughly $68 million, holding that "use of the POF method in common fund cases is the prevailing praxis" based upon the "distinct advantages that the POF method can bring to bear in such cases." The *Thirteen Appeals* Court stressed that the percentage method is far less burdensome to administer than the lodestar method in that it does not "forc[e] the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended," and in that it "lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." *Id.* The *Thirteen Appeals* Court also noted that, unlike the lodestar method, the POF method does not create "a monetary incentive to spend as many hours as possible" on the case, or, conversely,

---

[3] Ten Circuits -- the First, Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia -- have either endorsed or required the POF approach method for awarding counsel fees. *See, e.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) ("In common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered") (citations omitted); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993) (district court has discretion to award a percentage of the common fund); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (fee award should not be based on "individual hours," but rather on the percentage that counsel "would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (authorizing percentage method); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768,774 (11th Cir. 1991) (mandating use of percentage method); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases").

a "disincentive to early settlement," thereby more closely aligning plaintiff's counsel's interests

with the interests of the Class. *Id.* Finally, because the percentage method is "result-oriented

rather than process-oriented," the *Thirteen Appeals* Court noted that the POF method "better

approximates the workings of the marketplace." *Id.*

In *Bussie v. Allmerica Fin. Corp.*, No. 97-40204-NMG, 1999 U.S. Dist. LEXIS 7793, *5

(D. Mass. May 19, 1999), the court similarly summarized the advantages of the POF method

over the lodestar method:

> From a public policy standpoint, the POF method of calculating
> fees "more appropriately aligns the interests of the class with the
> interests of class counsel -- the larger the value of the settlement,
> the larger the value of the fee award". Furthermore, the POF
> method encourages efficiency and avoids the disincentive to settle
> cases early created by the lodestar method. [Citations omitted.]

*See also In re "Agent Orange" Prod. Liability Litig.*, 611 F. Supp. 1296, 1306 (E.D.N.Y. 1985),

*aff'd in part and rev'd in part*, 818 F.2d 226 (2d Cir. 1987) (criticizing lodestar approach as one

that "tends to encourage excess discovery, delays and late settlements, while it discourages rapid,

efficient and cheaper resolution of litigation"); *In re GMC Corp.*, 55 F.3d at 821 (noting that

lodestar method has been criticized for giving plaintiffs' counsel "the incentive to delay

settlement in order to run up fees"); *In re Sequoia Systems, Inc.*, [1993-94 Transfer Binder] Fed.

Sec. L. Rep. (CCH) ¶98,089, at 98,730 (D. Mass. Sept. 10, 1993) (percentage fee awards in

securities cases "ensure that those who are engaged in the plaintiff's side of securities litigation

are not unduly discouraged from prompt resolution of these cases"); *Shaw v. Toshiba Am. Info.*

*Sys.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("[t]he lodestar method rewards plodding

mediocrity and penalizes expedient success").

In addition to its relative simplicity and disincentive to run up fees, the percentage

method has been favored because it "directly aligns the interests of the class and its counsel[,] . .

. provides a powerful incentive for the efficient prosecution and early resolution of litigation,"[4]

and most closely approximates the manner in which private litigants compensate their attorneys

in the marketplace contingency fee model.[5]  Further, application of the percentage approach in

securities class actions is supported by the PSLRA, which provides that "[t]otal attorneys' fees

and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable

percentage of the amount of any damages and prejudgment interest actually paid to the class...."

*See* 15 U.S.C. §78u-4(a)(6).

No matter which method is chosen – percentage or lodestar/multiplier – the fees awarded

in common fund cases must be "reasonable" under the circumstances.  "[T]he process of

determining a reasonable fee is not scientific" and is left to "the discretion [of] the Court."

*Fleet/Norstar*, 935 F. Supp. at 109.

II.    **THE REQUESTED FEE IS FAIR AND REASONABLE AS A PERCENTAGE OF
       THE FUND CREATED FOR THE BENEFIT OF CLASS MEMBERS OR THE
       LODESTAR ANALYSIS AND IS LESS THAN FEE AWARDS IN COMPARABLE
       CASES**

Courts in this District and elsewhere frequently award attorneys' fees of 25-33 1/3% or

more of the settlement fund in securities class actions, significantly more than the fee award

being sought here.  The following is a list of recent decisions in this District alone in which at

---

[4] *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ.1262, 2002 U.S. Dist. LEXIS 22663, at *74 (S.D.N.Y. Nov. 26, 2002).

[5] *See Strougo v. Bassini*, 258 F.Supp. 2d 254, 262 (S.D.N.Y. 2003) ("the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (noting that the percentage approach is "uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys."); *In re RJR Nabisco*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96, 984, at 94,268 ("What should govern such awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.").

least 33 1/3% of a settlement fund has been awarded: *In re Number Nine Visual Tech. Corp. Sec. Litig.*, Master File No. 96-11207 (Order and Final Judgment dated Feb. 6, 2001) (awarding 33 1/3%); *In re Peritus Software Svc., Inc. Sec. Litig.*, Civil Action No. 98-CV-10578 (Order and Final Judgment dated February 28, 2000) (awarding 33%); *In Re: Copley Pharm., Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (33 1/3% fee awarded); *In re Picturetel Corp. Sec. Litig.*, C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (awarding 33 1/3%); *Zeid v. Open Env't Corp.*, C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding 33 1/3%); *Morton v. Kurzweil Applied Intelligence, Inc.*, C.A.No. 10829-REK (D. Mass. Feb. 4, 1998) (awarding 33 1/3%); *In re Bay Fin. Corp. Sec. Litig.*, C.A. No. 89-2377-WD (D. Mass. Nov. 4, 1996) (awarding 35% of settlement fund); *In re: Shiva Corp. Sec. Litig.*, Master File No. 97-11159 (Order and Final Judgment dated October 27, 1994) (awarding 33%); *In re Gillette Sec. Litig.*, C.A. No. 88-1858-K (D. Mass. Mar. 30, 1994) (33 1/3% of settlement fund); *Malanka v. de Castro*, 1990 U.S. Dist. LEXIS 19171, Fed. Sec. L. Rep. (CCH) ¶ 95,657 (D. Mass. Nov. 20, 1990) (33 1/3% of settlement fund); *Margaret Hall Found., Inc. v. Fin. Mgmt., Inc.*, C.A. No. 82-2543-S (D. Mass. May 9, 1989) (40% of settlement fund).

Moreover, in comparison to recent nationwide cases with settlement funds of similar magnitude to that obtained in this action, plaintiff's counsel's request of a 9% fee award represents a fraction of the lowest percentage award in those similar settlements, and as such is more than fair and reasonable. *See, e.g., In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004) (awarding 17% of approximately $517 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603 (E.D. Pa. 2003), and 146 F. Supp. 2d 706 (E.D. Pa. 2001) (collectively awarding 25% of combined $319 million settlement); *In re Oxford Health Plans Inc. Sec. Litig.*, MDL 1222 (S.D.N.Y. June 2003) (awarded 28% of $300 million settlement); *In*

*re Bankamerica Corp. Secs. Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002) (awarding 18% of

$490 million settlement); *In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778 (E.D. Va.

2001) (awarded 18% of $192.5 million settlement); *In re 3Com Corp. Sec. Litig.*, No. C-97-

21083, 1999 U.S. Dist. LEXIS 22685 (N.D. Cal. July 8, 1999) (awarding attorneys' fees of 18%

of $259 million settlement).  In addition, although the percentage fee awarded in the *WorldCom*

litigation was smaller based upon the amount of the recovery in that case, applying the fee

formula agreed to by NYSCRF as the lead plaintiff in *Worldcom* to the circumstance of this case

would have resulted in a modestly higher fee than the 9% requested here. *See In re WorldCom,*

*Inc. Sec. Litig.*, 02 Civ. 3288, 2004 U.S. Dist. LEXIS 22992, at *61-62 (S.D.N.Y. Nov. 12, 2004)

(approving attorneys' fees based on formula as set forth in retainer agreement between Lead

Plaintiff and lead counsel).  In light of these higher percentage of the fund fee awards in other

actions where the fund similarly consists of hundreds of millions of dollars, plaintiff's counsel's

request here for a 9% fee award is more than fair and reasonable.

### A.     The Relevant Factors Support Plaintiff's Counsel's Fee Request

In addition to examining fee awards in similar cases, courts have examined a variety of

factors to determine whether a percentage request is fair and reasonable, including, *inter alia*:

the amount of the recovery; the skill and efficiency of counsel; the complexity of the litigation

and the risk of nonpayment; and the amount of time devoted. *Manual for Complex Litig., Fourth*

§14.121 at 192-93 (4th ed. 2004).[6]  Each of these factors, and additional factors considered by the

courts, weigh heavily in support of plaintiff's counsel's 9% fee request in this case.

---

[6] Other Courts have considered similar factors. *See, e.g., Rawlings*, 9 F.3d at 516-17
(considering: (1) the value of the benefit achieved for the plaintiff class; (2) the value of the
attorneys' services; (3) whether counsel undertook the services on a contingent fee basis; (4) the
public's interest in rewarding attorneys who produce such benefits; (5) the complexity of the
action; and (6) the professional skill and standing of all counsel involved).  "The Court of

## 1.    The Amount of the Recovery

It is difficult to dispute that the actual benefit conferred by Lead Plaintiff on the Class –
the immediate recovery of $460,000,000 in cash and warrants – is an excellent result for the
Class. This is especially true where, as here, the case is fraught with substantial risks and
uncertainties, including the formidable and determined opposition of defendants, who have
consistently denied any wrongdoing.

As noted above, this Settlement is one of the ten largest securities class action settlements
in history and exceeds by far the maximum damages to the Class as a whole according to
defendants' experts. Each of defendants' damages experts testified that, even assuming
*arguendo* that Raytheon's financial results were materially misstated as alleged by plaintiff,
plaintiff's damages were only a fraction of the amount estimated by plaintiff's damages expert,
Dr. Scott Hakala.

Lead Plaintiff's recovery of $50,000,000 in cash from PwC is alone a significant success,
in that plaintiff's counsel would have faced the difficult burden at trial of procuring a jury award
in an amount far in excess of this $50 million, in order to account for the offset PwC would have
been entitled to based on the Raytheon Defendants prior $410 million settlement with Lead
Plaintiff and the Class and the issue of proportionate liability. *See* 15 U.S.C. §78u-4(f).

## 2.    The Skill and Efficiency of Counsel

The quality of the services provided by plaintiff's counsel in this case also supports the
requested fee award of 9% of the Settlement Fund. The quality of lead counsel's representation

---

Appeals for the First Circuit has not set forth any benchmark percentage figure, nor has it
provided a definitive list of factors for the fee determination. Rather, it has remarked that, 'in
respect to fee awards, the trial court's latitude is "extremely broad."' *Fleet/Norstar*, 935 F. Supp.
at 109 (quoting *Thirteen Appeals*, 56 F.3d at 309).

is evidenced by the substantial recovery obtained for the Class — $460,000,000 in cash and

settlement warrants.  Moreover, this action was prosecuted with the utmost efficiency by a small

dedicated team of attorneys in comparison to defendants' vigorous opposition undertaken by

much larger teams of attorneys.  The substantial settlement obtained illustrates the competence

and abilities of lead counsel.

Moreover, the quality of the work performed is reflected in the fact that counsel were

able to obtain a $460,000,000 Settlement even though there was a significant risk that a trial

might have resulted in a finding for defendants on liability or damages, or resulted in a lower

judgment amount.  As set forth in the accompanying Declaration, there was risk that Lead

Plaintiff would not have succeeded in convincing a jury that Raytheon's financial results were

materially and fraudulently misstated, that PwC's audit opinion was fraudulently issued, or that

the damages were what Lead Plaintiff claimed them to be.

Counsel's skill and efficiency in representing Lead Plaintiff and the Class is also

exemplified by the quality of the opposition in this case.  Hale and Dorr LLP, Kirkland & Ellis

LLP, and Foley Hoag LLP, counsel for the defendants, are skilled and experienced in defending

actions such as these, and senior litigation partners headed teams for each of these firms in

vigorously defending against this action.  The caliber of the legal work performed by the defense

attorneys was superior.  In the face of this formidable opposition, Lead Plaintiff was able to

develop its case sufficiently to press defendants into a substantial settlement of this action.  The

Settlements clearly reflect defendants' awareness of class counsel's ability and readiness to go to

trial if a fair settlement could not be achieved.  The ability of Lead Plaintiff to obtain such an

extraordinary settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of plaintiff's counsel's representation.[7]

### 3.     The Complexity of the Litigation and the Risk of Nonpayment

The complexity of the litigation also supports the requested fee award in this case. This action involved complex accounting issues, which were difficult to prove and explain to a jury. Lead Plaintiff had the burden of persuading the jury that Raytheon's misstated financial results were fraudulently issued and that the Company's Q3 1999 special charges for the RE&C projects were not simply a result of new cost growth associated with sudden and unforeseen events that occurred in 1999. Although Lead Plaintiff believed that there was strong evidence to support its claim that the Raytheon Defendants knew by the start of the Class Period that they needed to write down in excess of $600 million on problem RE&C projects, such as the "Actionable Asset Memorandum" prepared by Gregory Flick, a long-term RE&C management-level employee with extensive accounting experience, the Raytheon Defendants vigorously disputed that these facts were evidence of fraud. Moreover, PwC argued that there was no evidence that it was even aware of the Flick memo. The Raytheon Defendants also argued that Lead Plaintiff could not prove the required element of scienter in light of Raytheon's good faith reliance based on, *inter alia*, their contention that PwC had approved their accounting treatment on several occasions. In addition, Lead Plaintiff did not have the luxury of relying on a company restatement or adverse

---

[7] The experience of the lead law firm that represented plaintiff in this action is set forth in the accompanying affidavit of Lead Plaintiff's counsel submitted herewith. As that submission shows, plaintiff's lead counsel practices extensively in the highly complex field of shareholder securities litigation. *See, e.g., In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 195 (E.D. Pa 2000) (describing Milberg Weiss, one of plaintiffs' co-lead counsel in that case, as a firm with a "national reputation for advocacy in securities class actions," and further stating that "there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly").

findings by the SEC regarding the company's financial statements. No such events occurred in this action, and as such, Lead Plaintiff relied entirely on its own investigations into defendants' conduct through its discovery from the defendants and related non-parties.

Further, experts retained by the Raytheon Defendants and PwC – one of whom even helped draft one of the GAAP regulations that were relevant here – maintained that Raytheon's financial statements and the audit of those financial statements complied with all applicable accounting and auditing standards of practice. Although Lead Plaintiff's accounting and auditing experts testified to the contrary, and Lead Plaintiff believed there was substantial evidence supporting the testimony of its experts, the contradictory testimony of multiple defense experts, as well as numerous hostile fact witnesses from the Company and PwC, with respect to such a complex subject matter might have persuaded a jury that defendants did not engage in reckless or knowing misconduct, and that Raytheon's financial statements had been calculated and reported in good faith.

Lead Plaintiff also faced significant hurdles in demonstrating loss causation and damages. While the market's reaction to Raytheon's September 16, 1999 and October 12, 1999 announcements had been dramatic, defendants and their experts maintained that the resulting market decline could not be attributable to any alleged fraud and was attributable to numerous disclosures, most of which were not related to any alleged misconduct. For example, PwC argued that there was no evidence that these announcements revealed any misstatements in PwC's 1998 audit report. Similarly, the Raytheon Defendants argued that the alleged losses of Lead Plaintiff and the Class were caused by sudden and unforeseen events, such as labor unrest, damaged equipment, a subcontractor walking off a job, and a project manager suppressing cost and other data, and that Lead Plaintiff could not prove that such losses were caused instead by

13

any alleged fraud. Even assuming *arguendo* that plaintiffs prevailed on liability issues, plaintiff's counsel faced the equally if not more difficult task of proving damages, which also required highly technical and complex expert testimony.

Moreover, trial of these claims, which was expected to last six weeks or more, would have required substantial additional time and resources. Whatever the outcome of the trial, likely appeals would have been taken to the First Circuit and perhaps even to the U.S. Supreme Court. All of the foregoing would have delayed, for years, the ability of the Class to recover. Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial and post-trial proceedings.

### 4. Plaintiff's Counsel Undertook This Action on an Entirely Contingent Fee Basis

In addition to the litigation risk, plaintiff's counsel diligently and vigorously pursued this case for over four years on an entirely contingent fee basis. Courts have recognized that the risk of non-payment in complex cases such as this one is very real and is heightened when, as in this case, plaintiff's counsel press to achieve the very best result for those they represent. There are numerous class actions in which plaintiff's counsel expended thousands of hours and advanced significant out-of-pocket expenses and yet received no remuneration whatsoever, despite their diligence and expertise. *See, e.g., Freedman v. Value Health, Inc.,* No. 01-7567, 2002 U.S. App. LEXIS 8383 (2d Cir. May 1, 2002) (affirming district court's grant of summary judgment in favor of defendants); *In re Health Mgmt., Inc. Sec. Litig.,* No. 96-CV-889 (ADS) (E.D.N.Y. 1999) (jury verdict for auditor in securities class action case); *In re Biogen Sec. Litig.,* No. 94-12177-PBS (D. Mass 1999) (jury verdict for defendants in securities class action case); *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered

14

for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (appellate court affirmed

the grant of summary judgment to defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215

(10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs

in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *In re*

*Clorox Co. Sec. Litig.*, 238 F. Supp. 2d 1139 (N.D. Cal. 2002) (summary judgment and judgment

on the pleadings granted), aff'd, 353 F.3d 1125 (9th Cir. 2004); *In re Apple Computer Sec. Litig.*,

[1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,252 (N.D. Cal. Sept. 6, 1991) (class won

jury verdict against two individual defendants, but district court vacated on motion for judgment

notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won

a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the

judgment was reversed and the case dismissed, after 11 years of litigation).

The contingent nature of plaintiff's counsel's representation is an important factor in

determining a reasonable award of attorneys' fees. As the Second Circuit in *Detroit v. Grinnell*

*Corp.* stated:

> No one expects a lawyer whose compensation is contingent upon his
> success to charge, when successful, as little as he would charge a client
> who in advance had agreed to pay for his services, regardless of success.
> Nor, particularly in complicated cases producing large recoveries, is it just
> to make a fee depend solely on the reasonable amount of time expended.

495 F.2d 448, 470 (2d Cir. 1974), *citing Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61

(D. Mass. 1963). *See also Steiner v. Williams*, No. 99 Civ. 10186, 2001 U.S. Dist. LEXIS 7097,

at *18 (S.D.N.Y. May 31, 2001); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d

Cir. 1987); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp 160, 164

(S.D.N.Y. 1989)("[C]ontingent fee risk is the single most important factor in awarding a

multiplier"); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985),

aff'd, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys'

contingent fee risk is an important factor in determining the fee award.") (citations omitted). The enormous contingency risk in this case cannot be seriously disputed.

### 5.     The Amount of Time Devoted

The time and effort expended by counsel also supports the requested fee award in this case. Plaintiff's counsel have a total combined lodestar of $13,160,578.00, which represents over 40,972 hours expended in litigating this case, which settled literally on the eve of trial. This enormous effort, which yielded the $460 million settlements before the Court, was reasonable and necessary in light of the complexity of this case and the vigorous defense mounted by defendants.

Significantly, this was not a case in which plaintiff's counsel was helped in any way by any parallel government investigation. Although the SEC launched an investigation concerning Washington Group International, Inc.'s claims against RE&C, which had purchased the RE&C division of Raytheon, the investigation was closed without any finding against Raytheon. Thus, rather than assisting plaintiffs, the lack of any SEC finding against Raytheon or PwC could have been used by defendants as evidence to undermine plaintiff's claims of fraud and Lead Plaintiff had to develop this case on its own effort.

Lead Plaintiff alleged and was prepared to prove at trial that Raytheon's reported financial statements and PwC's audit of those financial statements were false and misleading. Evidence in support of these contentions was developed by counsel solely through their own efforts. After defeating defendants' motions to dismiss, plaintiff's counsel exhaustively reviewed hundreds of thousands of pages of documents produced by defendants and various non-parties, deposed over 40 witnesses, including Raytheon and PwC employees, and worked closely with accounting, auditing and damages experts.

Indeed, plaintiff's counsel worked at a virtual break-neck pace from the time that the parties' expert reports were disclosed in December 2003 until the eve of trial in May 2004. In between, lead counsel took back-to-back depositions of defendants' nine experts in nine days, responded to voluminous summary judgment motions from both the Raytheon Defendants and PwC in two weeks, with hundreds of exhibits, and then responded in one week to defendants' fifteen motions *in limine*, all while preparing for the presentation of plaintiff's case-in-chief at trial and engaging in settlement negotiations.

The hours expended by plaintiff's counsel in prosecuting this case are plainly reasonable given the stage at which the Settlements were reached and demonstrate the efficiency of counsel in prosecuting this complex action over four years. In addition to completing merits and expert discovery, responses to summary judgment motions, and completing significant trial preparation, witness and exhibit lists had been prepared and exchanged, testimony of unavailable witnesses had been designated, extensive planning and preparation of courtroom technology had been undertaken and implemented, motions *in limine* had been fully briefed and argued and rulings had been made by the Court. Significant work on opening statements and direct and cross examination of expected trial witnesses had also been completed at the time the Settlements were reached. Moreover, while all of this work in preparation for trial was being completed by lead counsel's trial team, who had moved to Boston for the purposes of putting on this case, there was a separate team of lawyers at the same time in New York who were participating in intense negotiations to settle the case. In short, this was not a case that settled cheaply or at a relatively early stage or without incredible effort.

As the foregoing discussion makes clear, the enormous time and effort expended by counsel without any guarantee of payment strongly supports the requested 9% fee in this case.

B.    **Public Policy Considerations**

Public policy considerations also support the requested fee in this case.  As the court held

in *Union Carbide*:

> The award of attorneys' fees in complex securities class action litigation is
> informed by the public policy that individuals damaged by violations of
> the federal securities laws should have reasonable access to counsel with
> the ability and experience necessary to analyze and litigate complex cases.
> Enforcement of the federal securities laws should be encouraged in order
> to carry out the statutory purpose of protecting investors and assuring
> compliance.  *See Bateman Eichler v. Berner*, 472 U.S. 299, 86 L. Ed. 2d
> 215, 105 S. Ct. 2622 (1985).  A large segment of the public might be
> denied a remedy for violations of the securities laws if contingent fees
> awarded by the courts did not fairly compensate counsel for the services
> provided and the risks undertaken.  These policies further support the
> award of a multiplier of counsel's lodestar fee.

724 F. Supp. at 169.  An award of the fees requested herein would be fully consistent with these

important public policy considerations.

III.    **A "CROSS-CHECK" OF PLAINTIFF'S COUNSEL'S LODESTAR
DEMONSTRATES THE REASONABLENESS OF THE REQUESTED AWARD**

While the percentage method is the preferred method of awarding attorneys' fees in this

Circuit and the requested fee should be approved under that method, the fee request is also

reasonable when analyzed under the lodestar/multiplier method.  To calculate attorneys' fees

under the lodestar method, the Court must first determine the base amount of the fee based on the

number of hours counsel productively expended on the case at counsel's hourly rate.  *See Lipsett*

*v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950-

51 (1st Cir. 1984).  After the basic lodestar figure is calculated, the court considers whether an

adjustment should be made in the form of a multiplier to reflect the contingent nature of any fee,

the delay in payment, the quality of representation and the results obtained.  *Id.* at 951.  *See also*

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d

Cir. 1976) (introducing the "lodestar" method).

To compensate for the long delay plaintiff's counsel encountered in receiving any compensation for their work in this case (over four years), it is appropriate to use plaintiff's counsel's current fee rates in calculating the lodestar. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (current rates, rather than historical rates, should be applied in order to compensate for delay in payment); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

In determining whether the rates are reasonable, the Court should take into account the attorney's legal reputation, experience, and status (partner or associate). In this case, lead counsel is one of the largest firms in the field of securities class action litigation, and the trial team of lawyers working on the case was led by Jared Specthrie, Salvatore J. Graziano, and Charles S. Hellman, all highly experienced and respected securities lawyers. Settlement talks were led by Melvyn I. Weiss, a respected and highly experienced member of the securities class action bar.[8] In short, the experience and reputations of plaintiff's counsel support the hourly rates charged. Clearly, the Class received the highest quality representation in this case

In recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors, the courts applying the lodestar method recognize that an appropriate multiplier should be applied to counsel's lodestar. The total lodestar reported by plaintiff's counsel is $13,160,578.00. Thus, the percentage fee requested represents a multiplier of only 3.14 to the cumulative lodestar of all plaintiff's counsel. This multiplier is well within the range of multipliers awarded by courts within this Circuit and

---

[8] The accompanying affidavits of plaintiff's counsel include a description of the background and experience of the attorneys who worked on this case.

19

elsewhere, and in settlements of similar magnitude. *See, e.g., Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (awarding a multiplier of 6); *In re Buspirone Patent*, 01-MD-1410, slip op. at 41-43 (S.D.N.Y. Apr. 11, 2003) (awarding multiplier of 8.46); *Maley*, 186 F. Supp. 2d at 368-69 (finding a multiplier of 4.65 to be within the range in the Circuit); *In re APAC Teleservices Inc. Sec. Litig.*, No. 97 Civ. 9145 (BJS) (percentage fee award of 33 1/3 % represented multiplier of 2.76); *Newman*, 99 Civ. 2271 (GEL) (percentage fee award of 33 1/3% represented multiplier of 7.7); *Union Carbide*, 724 F. Supp. at 170 (applying multiplier of 2.3 to lodestar of plaintiffs' steering committee).

As discussed more fully above, this case was enormously risky and complex and, as evidenced by the extraordinary result obtained, the representation afforded the Class on an entirely contingent basis over a period of more than four years was first-rate. Thus, the 3.14 multiplier requested in this case is eminently reasonable.

## IV.   THE ABSENCE OF OBJECTIONS BY CLASS MEMBERS TO THE FEE SOUGHT BY COUNSEL DEMONSTRATES THE REASONABLENESS OF THE REQUESTED FEE

The Notice, which was mailed to more than 180,000 potential Class Members,[9] advised the Class that plaintiff's counsel would apply for a fee award of nine percent of the Settlement Funds created, plus expenses. The Notice also expressly advised Class Members that they could object to the fee application. To plaintiff's counsel's knowledge, no objections concerning the fee award have been submitted. The absence of objections is especially noteworthy in this case since the Class includes a significant number of large, sophisticated institutional investors who collectively purchased a substantial percentage of the damaged Raytheon common stock during the Class Period.

---

[9] *See* Exhibit B to the Declaration, at ¶7.

As this Court is well aware and as this application makes clear, the excellent Settlements obtained for the Class in this action would not have been possible without the diligent efforts of plaintiff's counsel, who worked on this case for over four years without compensation. In light of the foregoing, counsel's fee request is entirely reasonable.

## V.   PLAINTIFF'S COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED LITIGATION EXPENSES

Plaintiff's counsel also request reimbursement for the reasonable and necessary expenses that they advanced to prosecute this litigation. These expenses total $6,992,407.22, and are detailed in the affidavits of plaintiff's counsel submitted herewith. Such expenses were essential to the successful prosecution and resolution of this action. *See TBK Partners, Ltd. v. Warshow,* [1977-1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,196, at 92,402 (S.D.N.Y. Oct. 6, 1977) (court noted in securities class action that "[o]f course, [plaintiffs' counsel] are also entitled to reimbursement for their expenses."). The Notice sent to Class Members stated that plaintiff's counsel would seek reimbursement of expenses up to $8.25 million, plus interest at the same rate the Settlement Funds earn. No Class Member has raised an objection to counsel's request for reimbursement of expenses as set forth in the Notice. Lead counsel is seeking significantly less than the amount indicated in the Notice. Due to the length and complex nature of these proceedings, the expenses incurred by plaintiff's counsel are reasonable and were necessarily incurred in prosecuting this action. As set forth in the Affidavit of Salvatore J. Graziano, ¶8, contained in the Compendium, the expenses include $4,875,275.06 for experts and consultants; $420,785.92 for travel and hotel; and $1,171,633.87 for copying incurred over four years of litigation. These expenses have been carefully reviewed and audited in detail by representatives of NYSCRF, the Lead Plaintiff, over a period of weeks in order to ensure the reasonableness of the expenses sought. The expenses sought herein include only those expenses

21

agreed to by Lead Plaintiff after taking into account certain limitations on costs required by Lead Plaintiff.[10]

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Declaration, plaintiff's counsel respectfully request that the Court grant their application for an award of attorneys' fees in the amount of 9% of the Settlement Funds (including interest on the cash portion), together with reimbursement of their expenses reasonably incurred to date in the amount of $6,992,407.22 for counsel and $2,664.87 for Lead Plaintiff, plus accrued interest to the date of the award to the same extent as has been earned by the Settlement Funds from the date of inception, with the award of attorneys' fees to be allocated among plaintiff's counsel in a fashion which, in the opinion of lead counsel, fairly compensates plaintiff's counsel for their respective contributions in the prosecution of the action.

---

[10] As set forth in the Declaration, pursuant to 15 U.S.C. §78u-4(a)(4), Lead Plaintiff also seeks reimbursement of its own travel expenses in the amount of $2,664.87 related to its participation in meetings and attendance at hearings in this case. As set forth in the Declaration, Lead Plaintiff also seeks reimbursement of the costs of one non-party witness's counsel who represented the witness who testified at a deposition in this case.

Dated: November 22, 2004

Respectfully submitted,

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans
BBO No. 184540
33 Broad Street
Boston, MA 02109
(617) 369-7979

*Special Local Counsel*
*To Lead Counsel*

Melvyn I. Weiss
Steven G. Schulman
Salvatore J. Graziano
Jared Specthrie
Charles S. Hellman
**MILBERG WEISS BERSHAD**
**& SCHULMAN LLP**
One Pennsylvania Plaza
New York, NY 10119-0165
(212) 594-5300

*Lead Counsel for Lead Plaintiff*
*And the Class*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE RAYTHEON COMPANY | : | Civil Action No. |
| SECURITIES LITIGATION | : | 99-12142-PBS |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

## CERTIFICATE OF SERVICE

I Nancy Freeman Gans, hereby certify that a true copy of the "Memorandum of Law in Support of Plaintiff's Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses" was served upon the attorney of record for each party by hand on November 23, 2004.

/s/ Nancy Freeman Gans
Nancy Freeman Gans

24